## 52267. SMITH v. THE STATE.

CLARK, Judge.

In this appeal from defendant's conviction of violating the Georgia Controlled Substances Act, the sole issue is whether the trial court erred in overruling defendant's motion to suppress the seized drugs.

Based upon information supplied by a confidential informant that heroin and cocaine were being sold at Milt's Barber Shop, a warrant was issued directing a search of "Milt (B/M)", the premises of Milt's Barber Shop, and "any other person on said premises who reasonably might be involved in the commission of the aforesaid

violation of the laws of Georgia."

The warrant was executed during the afternoon business hours of the barber shop and numerous employees and customers were subjected to the search. While the search was in progress, defendant drove up near the barber shop entrance and, leaving his car motor running, walked toward the premises. The plainclothes officer guarding the front door allowed defendant to enter the shop and asked him if he needed a haircut. Defendant gave a negative reply and was told by one of the barbers that the shop was closed. As defendant proceeded to leave the shop, the officer who was guarding the entrance noticed a bulge in the jacket pocket of defendant's three-piece suit. The officer stopped defendant and frisked him for weapons.[1] Although no weapon was discernible from the pat-down, the officer pulled back defendant's coat and observed a plastic bag in the inside pocket of the jacket. He then removed the plastic bag and discovered a powdery substance which was subsequently determined to be heroin. This finding prompted a complete search of defendant and the seizure of cocaine and marijuana.

At his bench trial, defendant relied solely upon the allegedly illegal intrusion, which he argued requires the suppression of the seized narcotics. The suppression motion was denied and defendant was found guilty of the drug offenses. The instant appeal is limited to a determination of the propriety of the search. *Held:*

1. We consider first the legal effect of the warrant's language purporting to authorize the search of "any other person on said premises who reasonably might be involved in the commission of the aforesaid violation." In the absence of this provision, the officer's authority to search other persons on the premises named in the warrant is prescribed by Code § 27-309, which provides: "In the execution of the warrant the person executing the

---

[1] The officer initially testified that his purpose in searching defendant was to protect himself against the possibility of attack. The officer's subsequent testimony, however, intimated that the search was prompted by the suspicion that defendant was carrying drugs. (T. 25).

same may reasonably detain or search any person in the place at the time: (a) To protect himself from attack, or (b) To prevent the disposal or concealment of any instruments, articles or things particularly described in the warrant."

The question of whether the warrant's inclusion of language authorizing the search of other persons on the premises can effectively broaden the limited searching authority prescribed in Code § 27-309, was squarely decided in *Wallace v. State,* 131 Ga. App. 204 (205 SE2d 523). The court held that such language does not "broaden their power to search persons not identified in the warrant beyond the limited terms of Code Ann. § 27-309 . . . [This Code section] describes the maximum extent to which the particularity of description required by the Fourth Amendment may be encroached upon by the practical necessities of the search environment. [Cits.]" *Wallace v. State,* supra, p. 205. Accord, *State v. Cochran,* 135 Ga. App. 47 (217 SE2d 181). Thus, if defendant's search is to be upheld on the basis of the warrant, the state must demonstrate that the officer acted under either of the two justifications provided by Code § 27-309.

2. Subsection (a) of Code § 27-309 permits a search to protect the officer from attack. It is clear that the type of weapons search referred to in this section is the limited pat-down search authorized in Terry v. Ohio, 392 U. S. 1 (88 SC 1868, 20 LE2d 889). We thus consider whether, as the state contends in its brief to this court, the search of defendant was in compliance with the standards set forth in Terry.

"[A] reasonable search for weapons for the protection of the police officer, [is permitted] where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Terry v. Ohio, supra, p. 27. Similarly, our Supreme Court has held that a search under Code § 27-309 (a) is permissible "only where the executing officer *may reasonably believe* that it is

necessary" to protect himself from attack. *Wood v. State,* 224 Ga. 121, 124 (160 SE2d 368). (Emphasis supplied.)

Were there circumstances from which the officer could reasonably believe that defendant posed a threat to his safety? The defendant, who was described by the officer as "clean cut" and wearing a three-piece suit, could hardly have been viewed as "an armed and dangerous individual" when he approached the seemingly open barber shop. When defendant was allowed to enter the shop by the officer guarding the front door, the premises and its occupants had already been searched and secured by five other policemen. It was not until defendant started to leave the barber shop, after being told it was closed, that the officer guarding the entrance decided to subject defendant to a weapons search.

We do not believe that defendant's innocuous behavior gave the officer reasonable grounds to believe that he was armed or that he posed a threat to the officer's safety. "Before [an officer] places a hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so. In the case of the self-protective search for weapons, he must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous." Sibron v. New York, 392 U. S. 40, 64 (88 SC 1889, 20 LE2d 917). As the executing officer was unable to point to any such facts which existed here, we conclude that he was without authority to initiate a search of defendant for weapons.

3. Even if we assume, arguendo, that a search for weapons was justified under these circumstances, the officer clearly exceeded the permissible scope of this type of search. " 'A frisk involves the patting-down of a person's outer clothing by a police officer . . . Unlike a full search, a frisk is conducted solely for the purpose of insuring the safety of the officer and of others nearby, not to procure evidence for use at a subsequent trial. Where, as in the case at bar, the officer does not feel an object which seems to be a weapon, but feels a package which he believes might be evidence of some crime, such as the possession of narcotics, the question arises whether he must terminate his search or whether he may reach into the person's

pocket and bare whatever it holds. "The sole justification of the search in the present situation is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." [Cit.] In other words, an extended search, exceeding the purpose of the frisk, would be constitutionally unreasonable, and any evidence thereby obtained must be excluded. . . In Terry v. Ohio, supra, the court's emphasis upon the procedures followed by the officer indicates that a two-step process must ordinarily be followed: (1) The officer must pat down first, and (2) then intrude beneath the surface only if he comes upon something which feels like a weapon.' " *Jones v. State,* 126 Ga. App. 841, 844 (192 SE2d 171).

The officer testified that, "When I patted him down I still was unable to determine whether or not he had a weapon in his jacket." (T. 5). " 'An officer who exceeds a pat-down without first discovering an object which feels reasonably like a knife, gun, or club must be able to point to specific and articulable facts which reasonably support a suspicion that the particular suspect is armed with an atypical weapon which would feel like the object felt during the pat-down. Only then can judges satisfy the Fourth Amendment's requirement of a neutral evaluation of the reasonableness of a particular search by comparing the facts with the officer's view of those facts.' [Cit.]" *Holtzendorf v. State,* 125 Ga. App. 747, 753 (188 SE2d 879). The officer's initial frisk revealed a soft object (the heroin) which clearly did not resemble any type of identifiable weapon. The officer was unable to state any reasons for suspecting that the soft object felt in defendant's pocket was an atypical weapon. Under these circumstances, his mere inability to identify conclusively the object of his frisk did not authorize any further intrusion. *Holtzendorf v. State,* supra.

Nevertheless, the officer proceeded to pull back defendant's coat, at which time he observed a plastic bag. At this point, the officer had clearly determined that the bulge in defendant's pocket was *not* a weapon. Having fulfilled the purpose of his self-protective search, the

officer was not then authorized to convert the weapons search into a general exploration for the seizure of suspected drugs. *Jones v. State,* supra. The officer's testimony reveals, however, that this is precisely what he did: "When I observed the plastic bag, being a Narco, you know, plastic and heroin, they go together like coffee and cream. And I saw that plastic bag and I reached my hand in his pocket and I removed it. And I saw a dark brown powder which I thought to be heroin." (T. 6) It is clear that the removal of the plastic bag from defendant's coat pocket exceeded the scope and purpose of the frisk and was constitutionally impermissible. *Jones v. State,* supra; *Holtzendorf v. State,* supra.

Since a search for weapons was neither warranted initially nor conducted within constitutionally permissible bounds, the seizure of the drugs cannot be justified on this basis.

4. Subsection (b) of Code § 27-309 permits the executing officer to search a person on the premises to prevent the disposal or concealment of the articles particularly described in the warrant. Since the search of the premises had been accomplished prior to defendant's arrival at the barber shop, it is obvious that defendant's search cannot be justified on this basis. See *Wallace v. State,* supra, wherein subsection (b) of this statute was held "factually inapplicable" to the search of a person arriving at the premises while the search was in progress. Compare *Willis v. State,* 122 Ga. App. 455, 458 (177 SE2d 487), whose facts are readily distinguishable from those presented here.

Since the officer's authority to search persons not identified in the warrant may not exceed the provisions of Code § 27-309, defendant's search cannot be upheld on the basis of the warrant.

5. The state argues that even if the intrusion cannot be upheld under the warrant, there existed independent probable cause of defendant's drug possession to authorize a warrantless search. We are unable to find any facts in the record which could reasonably support a probable cause determination. Defendant, who was unknown to the officers, merely entered a barber shop during normal business hours and began to leave when informed that the

shop was closed. Aside from defendant's presence in a public place which was the object of a narcotics search, there were no facts from which the officer could have suspected that defendant was carrying drugs.[2] Defendant's sterile activity falls far short of the constitutional standard required to conduct a warrantless search and seizure.

6. Since defendant's search exceeded the scope of the warrant and was unsupported by independent probable cause, we need not consider defendant's additional argument that the warrant itself was invalid as a general warrant. See *State v. Cochran,* supra; *Wallace v. State,* supra; *Wilson v. State,* 136 Ga. App. 70 (221 SE2d 62).

*Judgment reversed. Bell, C. J., and Stolz, J., concur.*

ARGUED JUNE 7, 1976 — DECIDED JUNE 22, 1976.

*DeVille, Levine & Lerow, Raoul Lerow,* for appellant.
*Lewis R. Slaton, District Attorney, Joseph J. Drolet, Carole E. Wall, Assistant District Attorneys,* for appellee.

---

[2]Additionally, the officer's claim that he searched defendant for weapons merely as a precaution against attack impliedly negates this later assertion that the search was conducted pursuant to a probable cause determination that defendant possessed drugs.